The next case for argument is 24-1523, Dynamite Marketing, Inc. v. WowLine. Mr. Snow, whenever you're ready. Good morning, Your Honors. May it please the Court, I mean, my name is Jeffrey Snow for the Defendant's  Will you speak up just a little bit, please? My name is Jeffrey Snow for the Defendant's Appellants, collectively called Sherman. This appeal challenges errors that were made in connection with the trial and post-trial motions. In light of all of the arguments that are set out in Sherman's briefs, I'm going to point out at least four bases in particular. First, reversal should be required based on the intervening change of the legal standard in LKQ. Well, that wouldn't be a reversal, that would be a vacate and remand, right? We're not throwing this out, I mean, we do, if we agreed with you that LKQ had some impact on the validity issue here, we would vacate and remand it for that analysis to be done under the appropriate standard. Yes, Your Honor. Okay. As well as the incorrect jury instruction on obviousness. Second, regarding inventorship, either the erroneous submission of this issue of law to the jury should be reversed, and if not, the verdict on inventorship should be set aside for lack of substantial evidence. Third, regarding substitutes or alternatives, which Dynamite would need to support its non-functionality based on acceptable alternatives, the existence of acceptable non-infringing substitutes eviscerates its lost profits damages claim, which should be vacated for lack of substantial evidence. And fourth, the lower court's erroneous application of law toward Dynamite's attorney's fee should be vacated as an abuse of discretion. So, let me go back to number two, I think, which was that it shouldn't have gone to the jury. That our analysis of that issue depends on our first concluding that you have standing to press that issue, correct? Yes, Your Honor. And is there not an issue of standing since Mr. Cooper is not here, and the issue of inventorship was litigated in connection with his case and not yours? Well, if cases were joined, Your Honor, that issue was, in fact, litigated at the lower court. In this situation, Sherman holds an assignment of Cooper's rights, so it has nothing to do with the requisite economic interest in his rights. Your understanding is based on your Noak-Protunk order, right? Yes, that's right. Well, under the law, under Abraxas, a Noak-Protunk order cannot confer standing. That's what Abraxas says? Yes, Your Honor, but we're dealing with the fact that this was an issue that was litigated. There was a show cause order on standing, and the judge in his footnotes said, I didn't really need to decide that one way or the other because the jury verdict mooted standing. So you stand in the shoes of Mr. Cooper, correct? That is true. That's how you're here as a matter of standing, as a result of the Noak-Protunk assignment from Cooper to you, correct? Yes, that's the answer. Yes, that is correct. And the law says that a Noak-Protunk order, right, doesn't suffice. It cannot supply standing. In your response to the Noak-Protunk, to the show cause order that Judge Brown gave you, you said, oh, well, Abraxas doesn't apply. That really doesn't apply because we're defendants. That's what you said, right? Yes. Right. Well, guess what? The case was not decided on the basis of you being a defendant. The jury verdict was against Sherman's counterclaim, plaintiff counterclaim. Yes, Your Honor. Yes, Your Honor. So you are standing in the shoes of a plaintiff counterclaimant, Cooper. And the law clearly says you do not have standing in that position. Yes, Your Honor. The issue that we have here is that the finding on inventorship has a negative impact on the claim that Sherman has. You don't have standing to complain. You have to have standing through Sherman to challenge any aspect of inventorship. Your standing is based on a Noak-Protunk order. You represented, right, you represented a Judge Brown, right, under the Federal Rules of Civil Procedure, Rule 11B. You represented and you made a truthful argument.  And trying to distinguish a Braxis on the ground that you were just a defendant, when in fact, you're a plaintiff, counterclaim, plaintiff. Yes, that's right. So you don't have standing to make any argument regarding inventorship. And I am gathering you to say you can see that right now. Well, our argument is that this was an issue that was decided adversely to Sherman and its claim, and that because it participated in that, it needs to have that issue reconsidered. Sherman isn't here. We're Sherman. You're talking about, I think you're referring to Cooper. Cooper is the party. You get your rights through Cooper. Yes. You don't have any rights on your own. You get Cooper's rights. That's what the Lent-Protonc Order was designed to do. But it came too late. The law says you can't use a Lent-Protonc Order after the case is filed. Yes, Your Honor. And as I said, just my argument about that is that because of the fact that it adversely affects Sherman's position, that is something that should be reconsidered. But I understand what you're saying. It adversely affects, but you can't get to the merits without standing. And I just want to caution you. You made a representation to a U.S. District Court judge that you had a legitimate argument to show why you had standing through Cooper. You said it was on the grounds that you were just a mere defendant. It wasn't the defendant's case that was tried to the jury. In bettership, it was Cooper's counterclaim. You look at the charge to the jury. You look at the jury verdict. Cooper failed to show. That's what he said. Yes, Your Honor. If I may, turn back to the issue of obviousness. Irrespective of other arguments, the intervening change in law under LKQ should require remand in this case. The jury instruction was to stop if they did not find a primary reference under the basically the same rule. I take your point about the jury instruction. But the case, as was litigated on validity, didn't really present an LKQ, Durling-Rosen issue about primary reference? Well, that was part of the instruction. And I believe that all of that was part of what was litigated. I'm not sure I further understand what you're asking about.  What is your LKQ point? That because of the intervening change in law and the jury instruction, the jury was instructed to stop if they did not find a primary reference under the Rosen-Durling test. Then they could not reach the verdict under the proper standard. Clearly, there's an intervening decision. There's an entirely different way of assessing obviousness under design patent law. Right?  The case was tried under the old regime. The jury was told if you failed, if they didn't present a Rosen reference, case is over. Don't do anything more. And the jury could have decided on that basis. So what are you asking for? Are you asking for remand? Try again on remand? Yes, Your Honor. Yes, to be retried. And trial on validity. On that issue. Yes, Your Honor. On 103, yes. Yes. What happens if we agree with you on that, hypothetically, what happens to the rest of the issues that are before us? For purposes of judicial efficiency, do we decide the damages point? And even though the verdict, obviously, is displaced, if we decide to vacate and remand, do we deal with damages, functionality, the attorney's fees issue, just for the purposes of efficiency, if, in fact, the jury comes back the same way? Yes, Your Honor. In this case, there's also the issue of functionality, which we're asserting is a potentially case dispositive issue because if the patent is found invalid for a functionality, that would resolve the issues and not necessarily require a remand for retrial on any of the issues. The other thing is that with respect to the monetary awards, damages, and the attorney's fees awards, we are asking this Court to look at that because those can be vacated. Those have been fully adjudicated and litigated from the court of law. And just damages, you're challenging the infringement verdict as well? Yes. I believe you didn't say that earlier in your category of issues. So assuming for purposes of argument that we were to decide that you have no standing to raise in vettership, period, boom, those issues go aside. Assuming we decided for purposes of argument that your argument on functionality fails and that the judge correctly found that the patent is not functional so that that validity challenge would resolve against you. And we vacate and send it back for another trial on obviousness. And we say it will be time enough. We do not need to consider infringement. We don't need to consider damages or attorney's fees now because you may well prevail and find the patent is invalid. So we save us time, right? Don't have to review those. If, perchance, you fail and the patent is sustained, you can appeal again and raise the infringement and the damages and the attorney's fees argument then. Why do we need to reach? I think this is the question the presiding judge was asking. We need to reach the functionality issue because if we disagree, the patent goes away. Other than that, why not save ourselves the time and save you the time and simply deal with, rather than inventorship, deal with functionality and remand? Yes, Your Honor. The efficiencies that would come from vacating the monetary award issues in this case, even if there were a remand and there was a finding that the patent is still valid, I'm sorry, that it was invalid, to avoid the problem of having to have another damages trial. That can lead to another damages trial. The record is closed on damages, right? The validity issue has nothing to do with damages, other than the fact that you don't pay them if you went on 103. Right. But in terms of what could happen next once it's back down to the lower court, a decision I started this. Let me just wrap it up by saying, do you agree that it's in our discretion, that it's the court's discretion to decide whether, for purposes of judicial efficiency, it ought to or not to reach those issues? Yes, Your Honor, it is. And we were asking that the court consider those issues as well while it is here on appeal. Thank you. You're into your rebuttal, so you want to save the rest of it? Yes, Your Honor. I'll save my rebuttal time. Come on in, Your Honor. May it please the Court. Initially, I would like to just direct the Court's attention to some places in the record that we didn't have a chance to point out after receiving the reply. Counsel, can you start by telling us whether or not you agree that we need to remand for a new trial on the validity issue in light of LKQ? I think your question was, how do I feel about whether LKQ requires a remand? Yes. Okay, thank you. Absolutely not. There's arguments all the time about jury charges being incorrect, but there's a standard for looking at whether that makes a difference or not, whether it was harmless or not. The jury charge here was not based on LKQ, right? No, Your Honor.  It was based on Rosen-Durling. Well, there was different elements to it. You want to go through the jury charge and tell me where it wasn't square on Durling and Rosen? I think Your Honor is probably pointing to the point where the judge said, if you don't find a primary reference that's basically the same, you stop there. The judge definitely said that. And the jury simply told us that the patent was not invalid. Yeah, they did, but based on the evidence that they had in front of them. And there was no evidence of any prior art in front of them. So fine. So they found one on the basis of Rosen, right? Maybe, but — Well, maybe. Why isn't that it? I mean, you said — Maybe it wasn't good enough, sir. You said, and it's probably true, that in some circumstances when we see an error in a jury instruction, we assess what impact it had. Isn't this in a different bucket? This is not just a run of the — we see lots of claims of error in jury instructions. This is stating what the law is that the jury has to use and apply in order to determine the question before it. This is as fundamental as you can get, is it not, in terms of a jury instruction, which clearly had an impact. I mean, it may not have been outcome determinative. That's why we're not talking about an outright reversal. I think we're talking about a retrial of that issue with the correct jury instruction. Right? Well, I don't think that there's any reason to suggest that the framework for analyzing any wrong jury charge should be any different. You have to look as whether it had an effect, possibly had an effect on the outcome. There was nothing in the jury charge, obviously, that would have had the LKQ standard, right? There was different elements of the jury charge about LKQ, and I think — Why don't you show us? You got it here? Show me, would you? There's been a lot of general talk in this case. The trial judge down below got a little irritated with both of you, right? Aren't I correct about that? Early on. Right? And we've got a Rule 11 big problem here in the first place with one of you guys. So at APPX 5290. What page is it, sir? 5290 of the appendix. 5290. 5290. This is the jury charge. Yes, Your Honor. On one of the three. I believe so, Your Honor. I know it. What about it? Well, you asked me where I believe the jury charge was close to being appropriate. I think this is where it is. That's how we phrased it. We didn't say close to being appropriate. I thought the question that I asked was where does the jury charge follow LKQ, and you told me you were going to show me where. I'm sorry. Well, if you're going to show me where, then definitely I agree that the jury charge said if you don't find a primary reference, that is basically the same stop there. And so you're arguing that, nonetheless, we should still affirm the jury verdict? Yes, Your Honor. Why? Because there's never been a case that I can find where anybody has proven obviousness without some piece of prior art. And the fact that the defendants do about LKQ, mentions it to the court in the jury charge, brought it up to the court's attention, asked for an LKQ charge, means that they knew the charge might change, and that the evidence they submitted they believed was appropriate under the LKQ charge. They chose to submit no evidence, zero. They cannot, as a matter of law, prove obviousness with zero evidence. I thought there was reference to the one card as being a primary reference. I'm sorry, Your Honor? I thought there was reference to the one card that the 230 patent as being the primary reference. There was a reference to the one in the upper corner as a primary reference, but no one ever told the jury that any of that was prior art. My question is, I thought there was evidence that pointed to that the 230 patent was the closest reference. That was what they were pointing to. There was no evidence that the 230 patent was prior art. The words prior art, there was no evidence that it was a patent. They had initial notice that it was prior art. It's a patent. The patent wasn't introduced into evidence. The cover page of the patent wasn't introduced into evidence. The words prior art. So there was no prior art before the jury? There was no prior art before the jury. The words prior art never left the mouth of their expert. And they moved nothing into evidence. Is there something in the record, a page you could point us to, so that we could see what you're saying about no prior art being before the jury? Yes, of course. Okay, tell us that page number. So I'm going to give you a couple of page numbers. Wait a second. The judge doesn't say that on your J-mall, right? The judge's decision here? Go ahead and give me those page numbers. All right. So a little bit out of order. Page 6605, I want to point out, is the last exhibit that's admitted. So everything else that came after that was not admitted to evidence. And that's all the alleged prior art that you're referring to. That was not admitted. And then there's very short testimony about obviousness. And there's plenty of discussion in front of the jury about the pocket monkey and the 230 patent. That may be true, Your Honor, but nobody said they were prior art. And there was no patent introduced into evidence as prior art. And what's the judge's J-mall? What section of his J-mall deals with validity? What's he say about that? I don't have that site in front of me. So you don't have the judge's opinion? I have it. Hmm? Second. All right. Judge, page 1415 of the J-A, judge is not talking about the fact that there was no evidence of any prior art cited against the patent for invalidity. Okay. Expert's opinion, all the experts said expert talked about the prior art. So I don't think it's, is it actually illegal for a judge to consider expert's sworn testimony about prior art to suffice for the presence of prior art? Maybe not, but that's not what happened here. There's no evidence in the judge's opinion that he is sustaining the jury verdict on an obviousness because there was no prior art cited against the patent. That's what I'm reading. I'm sure. I'm not saying you're wrong. But the testimony from Dr. Formosa, which was the obviousness testimony, was at pages 5176 to 8-7. And that's the extent of it. It's not a lot of testimony. It's easy to read. You can see that he, whatever he testified would not be enough under any standard to find obviousness because he did not talk about prior art. He did not identify any prior art. In fact, he did the opposite. He suggested that some of the images on his slides were available at Staples right now, which is at 5167. So he didn't talk. There is no prior art. It's an unusual case. You mentioned certain pages that I don't believe we have. You said 5176 to 8-7. At least my version of appendix doesn't have skips from 5174 to 5182. No, we don't have those pages. No, we do have 5167. I just want to make sure I can look at what you're actually trying to point us to. I'm sorry. I'm going to check that. But it's Dr. Formosa's testimony. It's very short. Let me make sure.  This is down here. Formosa.  And it starts with, I want to turn your attention to obviousness. I can get it here in a second. Okay, here, look. At the top of 5185, here is Dr. Formosa saying, da-da-da-da-da, what's the primary reference? A little tricky, probably. The primary reference is the one on the top left, hex shapes. It's pointing to what I pointed to, 230. So you told me earlier there had been no evidence about a, you know, this is his testimony. That is his testimony. There's no evidence that that's prior art. It's just a picture he put up of an image from a patent. He didn't introduce the patent. He didn't say it was prior art. He just put up a picture of something. There's no way you can have obviousness determination without a piece of prior art. Did you raise that objection? We didn't need to. They lost on obviousness because their arguments were the jury was against them on that. Their arguments were weak. But following up on Judge Crow's question, did you ever complain to the Court that there was a problem in terms of 230 patent not being prior art? No, because there was no reason for us to. Well, what about, I mean, in your, the judge had briefing on the JAMAL motions. Yes, Your Honor. Correct? And the validity issue was raised. Yes, Your Honor. And do you have, did you put that in your record here? Did we have your briefing on the JAMAL motions? Yes, Your Honor. Okay. Can you point to me in the JAMAL motions where you made this argument to the judge? I don't know. I cannot. I don't think we made that argument. Okay. Then you've surrendered that argument. Why have we surrendered it? You didn't make it. It's not, it's their evidence to bring. It's not we have to make an argument that they failed to bring the evidence. They brought no evidence to trial. Did you make that argument to the judge, to the jury, in closing, that there's no evidence here? I mean, the difficulty is we're not there, and they referred to 584 talks about the 230 patent. And the question is, Dr. Formosa, is this collection, have you identified any of these items as a primary reference? And then they, so they're talking about, and in fact, the judge says a minute later, I have no idea what a primary reference is.  If this is slide 11. That's correct. We have slide 11 from exhibit 240. It is not, that was not an exhibit that was admitted into evidence. Slide 11 was, was a PowerPoint set of slides that an expert prepared for support of his testimony. They were demonstrative. They were not submitted into evidence.  On whether there was any evidence? Well, why don't we wait and see what our client says. Okay, Theresa. Okay. So, and is there anywhere in the record that I know, I think we've already asked this question. Yes, twice. But is there anything in the record in which you made this argument to the jury, to the judge? I mean, did you make, I would, I assume based on what you're saying now, you would have said to the jury, look, this argument fails because there's no, you require a prior art reference, and there's no prior art reference in the story. We did not do that. Because. Why wouldn't you have done that if what you're saying to us is correct? Right. Because the trial strategy is legitimate. They put up an expert that was completely disqualified and dissembled in front of the jury. The jury didn't believe a word that he said. So there was no reason to attack his, to bring up and explain his arguments and then tear them down. You just lie in the woods and wait until the appeal. I didn't lie in the woods. It had. Why don't you point this out to the judge? The judge is obviously new to this because he says he didn't even know what a primary reference is. And so the judge got mad at both of you. And he thought you were jerking him around. And why didn't council members of the bar help the judge out a bit? And be honest with you. And say to the judge, hey, your honor, in this case, you shouldn't have gone to the  You didn't. And there actually weren't any legitimate pre-jury motions that said to the judge, well, we're going to argue later. That's OK. That's how we'll do it here. So it was a really sloppy trial. What about cross-examination? Didn't cross-examine the expert on obviousness. Didn't need to. The expert. You let them try their obviousest case. From your view, they put absolutely nothing in record. Although they referred, their expert referred to an exhibit. And you say that's not good enough. And you go through. The judge goes to all the trouble to make a, struggles to try to learn this and get a jury instruction up. Trouble the jury with all of this. Well, you know I'm going to wait until the appeal, and now I'm a gotcha. They didn't produce any evidence. I don't think that's what happened at all, your honor. Tell me why it didn't happen. Sure. If you didn't raise it, why didn't you raise this earlier? Because they spent five minutes. Why didn't you raise it earlier? As an officer of the court. Because we didn't even notice it, your honor. You didn't notice that they hadn't put any evidence in. That's a good one. They put in a five-minute testimony from an expert that said, I don't know, it looks pretty obvious to me, and moved on. We never were worried about the obviousness defense because there were so many things raised at trial. There were so many things that we had to deal with. That was such a minor one. They just, it's like five sentences of the expert. It just didn't, it didn't land with the jury. It didn't land with the court. It didn't land with us. We just moved on to all of the other issues that were raised by the defendant. We weren't hiding. But, I mean, to say that obviousness is just such a minor issue, that feels a bit disingenuous. Well, I think if you read the testimony of how the defendant tried to put their case in, you'll see that all the, really all the expert says is, it looks pretty obvious to me. That's it. It wasn't like there was a long testimony about it. It was, it was really, really quick. I think it's five sentences. So, it was a lot. So what's the judge say when he talks about other evidence of record in addition to the opinions of the expert? Has he taken leave of his sentences? What's he talking about when he says other evidence of the record? Amply supports the jury's determination. I think about non-obvious, there was certainly a lot of evidence of secondary considerations. There was a lot of that. There was the huge success of the Wallet Ninja. There was the deliberate copying. They had a defendant send me a copy of it to China to be copied. There was a lot of evidence of that. So secondary considerations, I think, were very appropriate for the judge to consider. Okay. I think we need to leave this issue. We've exhausted all of your time. I'll add another five minutes on if you want to discuss issues other than the obviousness. Okay. Thank you, Your Honor. And then we'll have the other side be prepared to respond to what we've just heard. Okay. The only thing that I want to additionally point out to you is that with regard to damages, I think that the defendant makes their argument as if it's an attack on the expert witness at trial. But really that's not appropriate because her, Ms. Schenk, the expert witness on damages, her reports were admitted without objection. And I think in response to that, Sherman argues, well, we made a motion of luminae before and we didn't need to renew that objection. So the site that I wanted to point out to you is that that's not exactly how it went. There was a motion of luminae that was not ruled on before trial. And then at opening, Sherman attacked Ms. Schenk in their opening. Then when it came time for her to testify, the judge ruled that it was appropriate for her to testify. But he did not specifically address any point of their motion of luminae with regard to her expert report, which was subsequently admitted. But what's even more interesting is, and this is the site I want to give you. The site which was subsequently admitted, did they object to its admission? No, Your Honor. They did not object. Not only did they not object, they said, no objection. And the judge asked them, no objection? And they said, no objection. And that's how it was admitted. Can you point us to where that admission occurred? You said you had some page sites for it. Sure. That's 5020. And I think we have it as a bold quote in the opposition brief also. And since I don't want to run out of time, I want to give you just one more site to have that you might not have had. At 4966, which I think is pretty significant, it's during Ms. Schenk's direct testimony, the judge stops her and asks her his own questions and questions her. And then at the end, he gives Sherman the right to renew their motion without any limitation. And he says, if they have further application, I'll hear it. And they did not make another motion. Instead, they cross-examined her. And then on redirect is when we introduced both the expert reports, and that's when they said no objection. So I think the reason that's significant is because the objection was not preserved and as it was not ruled on without equivocation by the trial judge. All right. Anything further? Thank you. So we'll give you five minutes. And obviously, we want you to address the point your friend made about the obviousness issue. Yes, Your Honor. With respect to the LKQ issue, as Your Honors pointed out, there was no stated objection by Dynamite, either before submission or after submission. I'm sorry. Let me start with, are the pages he gave us in the appendix, is that the sum of the substance of what was said by your side on obviousness? That testimony. I know that the testimony included at least pages, appendix 5185 to 87. But I don't know if it's limited to that. Can we just talk about prior art? Yes. Was there any prior art given in evidence? There was testimony about prior art that was provided. Just let me stop for a second. The exhibit D240, slide 11, which is the 230 patent. Yes. Was that admitted as evidence? Yes or no? I do not believe it was. I do not believe so. Is that a no? I do not believe so. You do not believe or is that a no? I believe that we did not do that. No, I did not. So we don't need? Maybe the person at the table could help confirm the accuracy of the statement that was just made? I believe he is correct. I don't believe it was admitted as evidence. It was not admitted? Correct. It was presented in connection with the trial testimony as a demonstrative, accompanying testimony on the screen presented to the jury. And that art and other prior art. There was a lot of evidence. All right. Was there any other prior art put in evidence? There were references to the prior art in the testimony. I do not believe there was other. Where are those references to? Other than the 230, where is the reference to other prior art? There was testimony regarding the, what's been referred to as this demonstrative, which is shown in the principal brief, the blue brief at page 41. Blue brief, blue brief 41? Yes. Where is, what was the record evidence? Where is the appendix? In the appendix. Wait a second. Those drawings on 41 you're saying were in evidence? They were subject of the testimony by.  They were the subject of the testimony by Dr. Formosa. Not in evidence, but subject of testimony? That's right. You mean they were presented as demonstratives, but not actually in the exhibits? Is that, I'm just trying to confirm. That's right. And there was no objection to the testimony? There was no objection on that. There was no objection raised at the time that the jury instruction was submitted. And there was no objection in connection with the post-trial J-Mal motion. So there's. So we're arguing it's a waiver, waiver of the waiver argument. But let's assume hypothetically there's no evidence. Let's assume there was nothing on obviousness. Are we really going to find it's a waiver, even if the other side didn't say it? We've got to review the record, even on a deferential standard of review. And obviousness is a question of law. Right. I'm sorry. It is a question of law based on underlying facts, and those facts could have been induced through the testimony that was provided during the trial. Not only of. But we get to look at the record for purposes of evaluating whether or not the change in law resulting from LKQ has any relevance to what went on here. We look at the record, and your friend makes an argument that it doesn't have any relevance because there was no primary reference put in the record. There was no applicability of the key portions of LKQ that were, or Rosen-Darling, that were changed. That's for us to, irrespective of whether there's an objection, that's the record we have. Right. But there was testimony. There was a trial record relating to the issue of obviousness. That was litigated before the Court. So it's not that there's completely no evidence. There is expert testimony in that regard. So maybe just a high level question for you. Let's say we were to remand to have it tried under LKQ. What evidence that hopefully has already been provided to the Court would you actually submit? We have a testimony that was already put in. I do not believe we have a problem necessarily admitting the evidence that was already provided, as well as potentially new evidence that would have come up. But you didn't have an entitlement to, I mean, let's assume we say we have to vacate this because of the jury instruction. Do you get to put on new stuff and a whole new trial? I mean, what entitles you to that? The do-over is for purposes of applying the correct standard. It's not, okay, now I'm going to find 15 pieces of prior art and put them in the record now. Well, I don't think it's as extreme as that, but there was discussion. Well, I'll take 15 pieces of prior art and put them in the record. Do you think you get to review the evidence, to redo the evidentiary basis for this? Right. Well, if we're talking about the potential applicability of other references because the standard has changed, then there may be other references that would be applicable because we're not talking about applying the Rosen-Darling test anymore, that we now have the new standard under LKQ, which is Graham. Can a judge and the judge's discretion allow the jury to consider expert testimony about prior art when the prior art itself wasn't submitted in evidence? I believe that's so, and that's because the obviousness issue is a question of the law. So you think the judge had the authority to do that if he wanted? Yes. So we don't know the answer to the question. If this case gets sent back, right? Yes. Then the case is going to be tried on the record that's already been made. The question is whether or not under the record that's been made you can prevail under LKQ. And your other side is going to stand up and say, stop right now because there's been no prior art in evidence. And the judge may well say, no, no, no, I allowed the jury to hear that because I treated the expert testimony as though it were in evidence. Yes, Your Honor. We don't know the answer to that. And I guess that would be determined on a remand if that's the way it's presented. Yes. Can you ask them to give us a brief that's like every piece of evidence so we don't have to go through it? Okay. So at Judge Clevenger's apt suggestion, we'd like a letter from you or a form with attachments of all the evidence relating to the obviousness issue that was presented to the jury. Yes, Your Honor. But make sure. Maybe you can attach them because I'm not sure. We don't have all the pages. Sir, could you also do the same thing? Sure, Your Honor. Just so we can confirm it and not go back and forth. So a simultaneous briefing or letter brief. I don't know what your schedules are like. Ten days, you know?  Have them be a joint because they'll argue with each other. No, no, I don't want a joint. I want everybody to submit a separate letter which identifies, attaches, and identifies all of the appendices sites or all of the record sites in terms of what was said and done with respect to obviousness. And that might well include the closing statements or whatever, too. Yes. We want all the sites. Okay. And if you could be clear about what was actually admitted in evidence. I think that would also be useful.  Seven days.  Seven days? Seven calendar days. Yes, Your Honor. I would continue. I know that the extended time now has run out. Yes. Thank you. We thank both sides. Thank you, Your Honor. Please submit it.